# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:12-CV-00697-FDW-DCK

| | |
|---|---|
| AUDREY SCOTT, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA d/b/a TIAA, | ) |
| Defendant. | ) |

THIS MATTER is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. No. 17), pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Because Plaintiff appears *pro se*, the Court issued a Roseboro notice (Doc. No. 20) advising Plaintiff of her right to respond to Defendant's Motion to Dismiss on or before February 22, 2013. Plaintiff responded in timely manner (Doc. No. 21), and Defendant then replied to Plaintiff's Response. (Doc. No. 22). For the reasons stated below, the Court GRANTS Defendant's Motion.

## I. BACKGROUND

*Pro se* plaintiff Audrey Scott ("Plaintiff"), who is proceeding *in forma pauperis*, initially filed this action in this Court on October 23, 2012. Plaintiff is a former employee of Teachers Insurance and Annuity Association of America d/b/a TIAA ("Defendant") and is alleging discrimination with respect to her race, color, and sex, as well as harassment and retaliatory

1

employment discrimination. (Doc. No. 1, 21). On January 8, 2010, Plaintiff asserts that she requested to file a formal written complaint against her direct supervisor with Defendant's Human Resources Department, Department Director Robert Ahearn and Director Lynell James. (Doc. No. 1, Ex. A3).[1]

On December 6, 2011, Plaintiff filed Charge No. 430-2012-00506 ("Plaintiff's First Charge") with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on disability and retaliation for such disability. (Doc. No. 18). On December 7, 2011, one day after Plaintiff's filing of the Charge of Discrimination, the EEOC issued Plaintiff a "Right to Sue" letter, notifying her of her statutory right to file suit based on her EEOC charge under federal law within ninety (90) days of receipt of the "Right to Sue" letter. (Doc. No. 18).

On February 1, 2012, Plaintiff filed Charge No. 430-2012-00899 ("Plaintiff's Second Charge") with the EEOC, citing retaliation by her employer for Plaintiff filing her first EEOC charge on December 6, 2011. (Doc. No. 18). Plaintiff contends that Defendant discriminated against her in retaliation for her filing a charge with the EEOC because she was denied a bonus and given a poor year end performance evaluation. (Doc. No. 18). On August 21, 2012, the EEOC again issued Plaintiff a "Right to Sue" letter, notifying her of her statutory right to file suit based on this EEOC charge under federal law within ninety (90) days of receipt of the "Right to Sue" letter. (Doc. No. 18). Plaintiff subsequently filed this action and Defendant has moved to dismiss the Complaint.

## II. ANALYSIS

---

[1] It is unclear whether a formal written complaint was actually filed against her direct supervisor.

### A. Subject Matter Jurisdiction

Rule 12(b)(1) provides for dismissal where the federal district court lacks jurisdiction over the subject matter of the lawsuit. Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction exists when the complaint raises a federal question under 28 U.S.C. § 1331 or diversity of citizenship under 28 U.S.C. § 1332. Lack of subject matter jurisdiction may be raised at any time either by a litigant, or by the court. Mansfield, C & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884). "When a federal court concludes that it lacks subject matter jurisdiction, the court must dismiss the complaint in its entirety." Mosley v. Wells Fargo Bank, N.A., 802 F.Supp.2d 695, 698 (E.D.Va. 2011) (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006)). In a discrimination context, 42 U.S.C. § 2000e-5(f)(3) grants subject matter jurisdiction to federal district courts over actions brought under Title VII of the Civil Rights Act of 1964 ("Title VII"). Chris v. Tenet, 221 F.3d 648, 651 (4th Cir. 2000).

#### 1. Plaintiff's First Charge

Defendant argues that to the extent Plaintiff asserts claims of discrimination under Title VII, such claims are barred as untimely. A potential plaintiff alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1), (f)(1); Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005). "A failure by the plaintiff to exhaust [these] administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 299 (4th Cir. 2009); Chacko, 429 F.3d at 509. Once the EEOC determines that no cause exists and issues a dismissal and notice of a "Right to

Sue" letter, the potential plaintiff must initiate a civil action with the federal court within ninety (90) days. 42 U.S.C. § 2000e-5(f)(1). When, however, the actual date of Plaintiff's receipt of the "Right to Sue" letter is unknown, courts will presume that receipt is three days after the mailing by the EEOC, thus sometimes giving potential plaintiffs a ninety-three (93) day window to commence an action. See Taylor v. Potter, 355 F. Supp. 2d 817, 819 (M.D.N.C. 2005) (citing Fed. R. Civ. P. 6(e)). If the subsequent civil action is not filed within this ninety (90) day window, the jurisdiction of the district court is defeated, and the court must dismiss for lack of subject matter jurisdiction. Staton v. Newport News Cablevision (NNCV), 769 F.2d 200, 200-01 (4th Cir. 1985).

Plaintiff's First Charge alleges that she was discriminated against under Title VII based on a "disability" and the fact that she became ill and refused to stay at work on a particular occasion in 2009.[2] (Doc. No. 18). Plaintiff was issued a "Right to Sue" letter for her First Charge on December 7, 2011; however, because Plaintiff fails to state when she received the letter, she is entitled to a three-day presumption under Fed. R. Civ. P. 6(e). Thus, in order for this Court to have subject matter jurisdiction over her First Charge, Plaintiff would have needed to commence this civil action on or before March 2, 2012 (93 days from December 7, 2011). (Doc. No. 18). Plaintiff filed this action on October 23, 2012, approximately 322 days after receipt of the "Right to Sue" letter, a date well beyond the prescribed time limit. (Doc. No. 18). Because Plaintiff did not commence an action within the ninety (90) day time period set forth in 42 U.S.C. § 2000e-5(f)(1), or even within a ninety-three (93) day period, this Court lacks subject

---

[2] While disability may not be a protected class under Title VII, the procedural requirements under Title VII are specifically made applicable to 42 U.S.C. § 12117(a) of the Americans with Disability Act ("ADA"). See Miller v. Ingles, 2009 WL 4325218 at *10 (W.D.N.C.). See also Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001) (acknowledging that "because the ADA echoes and expressly refers to Title VII and because the two statutes have the same purpose-the prohibition of illegal discrimination in employment-courts have routinely used Title VII precedent in ADA cases").

4

matter jurisdiction to hear Plaintiff's First Charge regarding her "disability" and "illness," and therefore it must be dismissed. See Arbaugh, 546 U.S. at 514.

Further, due to the fact that this Court lacks subject matter jurisdiction over Plaintiff's First Charge, all general discriminatory allegations stated in Plaintiff's Complaint, made in conjunction with the First Charge between the dates of January 2009 and December 5, 2011,[3] must be dismissed. These include, but are not limited to:

a. allegations that Plaintiff was discriminated against, and given poor performance reviews, on the basis of her race, color, and sex;

b. allegations that she was not held to the same standards as her male and Caucasian female co-workers; and,

c. allegations that she was harassed, bullied, and investigated.

**2. Plaintiff's Second Charge**

Plaintiff's Second Charge filed with the EEOC on February 1, 2012 alleges retaliatory discrimination under Title VII for Plaintiff's filing of her First Charge with the EEOC in December 2011. (Doc. No. 18). Plaintiff was issued a "Right to Sue" letter for her Second Charge on August 21, 2012, and subsequently filed the present action on October 23, 2012, well within the ninety (90) day time period and still well within the time period accounting for the three-day presumption. (Doc No. 1). See Potter, 355 F. Supp. 2d at 819 (citing Fed. R. Civ. P. 6(e)). Because Plaintiff timely commenced this Title VII civil action with the court within the guidelines set forth by 42 U.S.C. § 2000e-5(f)(1), this Court has subject matter jurisdiction over

---

[3] The Plaintiff's First Charge that she filed with the EEOC states that the alleged discrimination took place between the dates of January 2009 and December 5, 2011. (Doc. No. 18).

any retaliatory discrimination that may have occurred against Plaintiff between the dates of December 5, 2011, and January 13, 2012 (Doc. No. 18).[4]

### 3. Plaintiff's "Third Charge" (Doc. No. 26)

Plaintiff's June 12, 2013, EEOC Charge No. 430-2013-01754 is not ripe, and the Court is perplexed as to why Plaintiff has chosen to file it on the docket in the case at bar. It is well-settled law that before a plaintiff may file suit under Title VII, he or she must first file a charge of discrimination with the EEOC. Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). "Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." Id. (citing Davis v. North Carolina Dep't of Corr., 48 F.3d 134, 138-40 (4th Cir.1995) (holding that removal of Title VII action was improper because plaintiff's failure to exhaust administrative remedies deprived the federal courts of subject matter jurisdiction)). This Court has no jurisdiction over this charge because Plaintiff has not exhausted her administrative remedies.

### B. Rule 12(b)(6) of the Federal Rules of Civil Procedure

In order to survive a Rule 12(b)(6) motion, the Complaint must contain enough facts so as to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Id. Further, under a 12(b)(6) motion, the facts alleged in the complaint are presumed to be true, and the court must view those facts in the light most favorable to the plaintiff. E. Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 179 (4th Cir. 2000).

---

[4] The Plaintiff's Second Charge that she filed with the EEOC states that the alleged retaliatory discrimination took place between the dates of December 5, 2011 and January 13, 2012. (Doc. No. 18).

A 12(b)(6) motion should not be granted unless the plaintiff alleges facts that are sufficient to "raise a right to relief above the speculative level." Robinson v. Am. Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While courts apply a more liberal standard to *pro se* complaints, even holding complaints written by *pro se* plaintiffs to "less stringent standards than formal pleadings drafted by lawyers," courts still are not bound by a plaintiff's legal conclusions.  Haines v. Kerner, 404 U.S. 519, 520 (1972); Randall, 30 F.3d at 521; Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

### 1. Plaintiff's First Charge

Because Plaintiff's First Charge has been dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, Defendants' Fed R. Civ. P. 12(b)(6) claim with respect to Plaintiff's First Charge is moot and need not be analyzed nor addressed any further.

### 2. Plaintiff's Second Charge

To the extent that Plaintiff's Second Charge alleges retaliatory employment under Title VII, Defendant argues such claims are barred for failing to allege sufficient facts necessary to support a claim of retaliation.  (Doc. No. 18).  Plaintiff specifically alleges that she was retaliated against by way of being denied a bonus and by receiving a poor end of the year performance report.  (Doc. No. 18).  As previously discussed, Plaintiff's Second EEOC charge defines the scope of this civil suit, and as a result, the approximate dates of the alleged discrimination taken from Plaintiff's Second Charge (December 5, 2011 to January 13, 2012) create the timespan from which this Court may consider any alleged retaliatory measures.  See Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000) (holding that a plaintiff's EEOC charge defines the scope of her right to initiate a civil suit).

7

In order for Plaintiff to establish a claim of retaliation under Title VII, she must prove that (1) she engaged in protected activity under Title VII, (2) she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004).

Presuming without deciding that Plaintiff has engaged in protected activity under Title VII by filing a charge with the EEOC,[5] Plaintiff has still failed to allege sufficient facts to establish that she suffered adverse employment action. An adverse employment action is an act that adversely affects the "terms, conditions, or benefits" of a plaintiff's employment. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 650-51 (4th Cir. 2002). The Supreme Court further defines an adverse employment action as a "'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Wagstaff v. City of Durham, 233 F. Supp. 2d 739, 744 (M.D.N.C. 2002) (citing Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998)). Absent a showing of discharge, a decrease in pay or benefits, loss of a job title, or a decrease in level of responsibility, courts generally have ruled that the action will not constitute an adverse employment action. Boone v. Goldin, 178 F.3d 253, 255-57 (4th Cir. 1999).

In this case, Plaintiff is unable to allege any set of facts that make it plausible that she suffered any adverse employment actions. Her allegations that no verbal compliments were taken in her favor and that her supervisor reached out to other employees regarding her FMLA, do not adversely affect any term, condition, or benefit of her employment, nor do they equate to any significant change in employment. Further, her allegations that she requested a transfer off

---

[5] This Court has held that "the actual existence of an unlawful employment practice is not necessary for the Plaintiff to prevail on a Title VII retaliation claim, so long as the Plaintiff reasonably believed that the Defendant was engaged in an unlawful employment practice." Wilson v. Southern Nat. Bank of North Carolina, Inc., 900 F. Supp. 803, 811 (W.D.N.C. 1995).

of Rose's team three times and yet was denied such transfer does not alone qualify as an adverse employment action. See Wagstaff, 233 F. Supp. 2d at 744. Plaintiff would have to additionally establish that the refusal to grant her a transfer "had some significant detrimental effect" on her, such as her pay would be reduced, she would have less responsibility, she would have a lower rank, or she would have a diminished opportunity for promotion. Id. (citing Boone, 178 F.3d 253, 256-57).

Plaintiff also alleges that she was given an inaccurate, poor performance review at the end of the year in retaliation for filing her First Charge with the EEOC, thereby affecting her eligibility to receive a bonus or promotion. (Doc. No. 1). While under certain circumstances this may constitute an adverse employment action, Plaintiff fails to assert any facts that would make it plausible that this alleged inaccurate performance was done in retaliation for filing a claim with the EEOC. See also Pulley v. KPMG Consulting, Inc., 348 F. Supp. 2d 388, 394 (D.Md. 2004) (finding that "neither the poor evaluation rating," nor the placement on performance improvement program constitute adverse employment actions).

The Court next turns to Plaintiff's claims that her poor performance review affected her eligibility to receive a promotion. In order for Plaintiff to establish an actual discriminatory "failure to promote" claim, she would have to establish that there was an open position for which she either applied or wished to apply for, that she was qualified for the position, and that she was subsequently rejected for the position. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959-60 (4th Cir. 1996). A true "failure to promote" claim is inherently different than an employee becoming ineligible for a promotion. In the situation in the instant case, Plaintiff has failed to establish an actual "failure to promote" claim, as she does not allege that there was a position available that she sought to apply for, nor does she even allege that there was an open

position at all. She instead argues that the poor performance review rendered her ineligible for promotion, should an opportunity arise. However, absent a showing of any discriminatory and retaliatory intent, if an employer's discipline policy makes an employee ineligible for promotion, then that employer cannot be said to have engaged in an adverse employment action. See Lloyd v. New Hanover Reg'l Med. Ctr, 405 F. App'x 703, 705 (4th Cir. 2010) (finding that a nurse's record of discipline, which made her ineligible for promotion under the medical center's discipline policy, was not pretext for retaliatory discrimination).

In regards to Plaintiff's allegations that the poor performance review also stiffened her chances of a bonus, "the non-receipt of a discretionary bonus does not constitute an adverse employment action." Schamann v. O'Keefe, 314 F. Supp. 2d 515, 531 (D.Md.2004).

Finally, the Court finds it important to note that Plaintiff admits in her Complaint that prior to her filing her First Charge with the EEOC, she had already been placed on written warning at least two times, which had already affected her eligibility to receive any bonus or promotion at that point. (Doc. No. 1 at p. 12, 13, 15, 18). She had also previously received various low performance scores. (Id.) This pattern of events renders it implausible that Plaintiff's "inaccurate," poor performance review was at all related to her filing a claim with the EEOC in December 2011, and thus Plaintiff's claim of retaliation must be dismissed.

### III. CONCLUSION

In sum, Defendants' Motion to Dismiss is GRANTED, in part because this Court lacks subject matter jurisdiction over Plaintiff's First Charge and also because Plaintiff has failed to state a claim upon which relief can be granted for her Second Charge. The Court notes that although Plaintiff has filed a copy of what appears to be a Third Charge of Discrimination

10

against Defendant (Doc. No. 26), the Court also lacks subject matter jurisdiction over those claims at this time.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. No. 17) is GRANTED, and the Clerk is respectfully directed to CLOSE THE CASE.

IT IS SO ORDERED.

Signed: June 14, 2013

Frank D. Whitney
Chief United States District Judge